IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-803-D

EDWARD L. TRAPP, )
)
                Plaintiff, )
)
v. )     **ORDER**
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
)
                Defendant. )

Edward L. Trapp ("Trapp" or "plaintiff") challenges the final decision of Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner" or "defendant") denying his application for social security benefits. The parties filed motions for judgment on the pleadings [D.E. 24, 26] and memoranda in support [D.E. 25, 27]. As explained below, the court grants the Commissioner's motion, denies Trapp's motion, and affirms the Commissioner's final decision.

I.

On July 29, 2010, Trapp applied for benefits and claimed that he was disabled. Transcript of Proceedings ("Tr.") 10. On his application, Trapp claimed that he became disabled on August 6, 2009. Id. The Social Security Administration ("SSA") found that Trapp was not disabled, and denied his application. Id. 77. Upon Trapp's request, the SSA reconsidered his application, but again denied it. Id. 86. Trapp then requested and received a hearing before an Administrative Law Judge ("ALJ"). Id. 96. On November 21, 2011, the ALJ denied Trapp's claim. Id. 10–17. Trapp timely sought review with the Appeals Council, to no avail. Id. 1. Trapp timely sought judicial review. See 42 U.S.C. § 405(g).

In reviewing the Commissioner's denial of benefits, a district court is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the Commissioner applied the correct legal standards. See id.; Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla of evidence but may be somewhat less than a preponderance. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). When reviewing for substantial evidence, the court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), superseded by regulation on other grounds, 20 C.F.R. § 416.927(d)(2). To determine whether a decision is supported by substantial evidence, the court must determine whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439–40 (4th Cir. 1997).

In evaluating disability claims, the Commissioner follows a familiar five-step process. The Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to the claimant's past relevant work; and (5) if not, could perform any other work in the national economy. See 20 C.F.R. § 416.920(a)(4). The claimant has the burden of production and proof in steps one through four. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). If the process reaches the fifth step, the Commissioner has the burden of proving that the claimant, despite impairments, can perform a job that exists in significant numbers in the national economy. See id.; Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

2

## II.

At his hearing, Trapp testified that he resigned from his job as a state correctional officer in 2000 because he "was just in a lot of pain." Tr. 27–28. He has not looked for work since his resignation and has lived on his state pension. Id. 28. According to Trapp, his right leg is constantly in pain, and it gets worse when he walks. Id. 28–29. With the assistance of a cane, which Trapp obtained on his own, not at a doctor's instruction, he can walk about a block before having to take a break. Id. 30. He injured his right hand when he was young, and still has problems with it. Id. 32. Notwithstanding the problem with his right hand, Trapp was able to work as a correctional officer because he "[d]idn't have to use" his right hand for that job. Id. 33. For example, although the general rule was that correctional officers should use both hands when firing a gun, Trapp convinced his superiors to let him use only his left hand. Id. Trapp also testified that his lower back, lower stomach, and groin area also cause him pain while sitting. Id. 30. He is not sure how long he can sit before having to stand up, because sometimes he "just move[s] around in [his] chair and cope[s] with the pain." Id. Nonetheless, Trapp has not seen a doctor "for quite some time" because, when he did, "[it] didn't help." Id. 31. Similarly, Trapp does not take any medicine, even ibuprofen, because it does nothing for him, and he is concerned about its side effects. Id. 32.[1]

In Trapp's application for benefits, he wrote that when he was a correctional officer, his job duties were to "[o]versee inmate activities, walk, stand, sit, supervise, transport, [and] deal with incidents when [the] job called for it." Id. 183. He wrote that this work involved lifting and carrying weapons and ammunition at the start and end of his shift, two to three days per week. Id. He also

---

[1] At the hearing, Trapp also testified about several additional issues, such as dizziness and forgetfulness. The ALJ found that these additional complaints were not credible, Tr. 15; therefore, the court does not address them.

3

wrote that the heaviest weight he lifted was 50 pounds, but that the weight he lifted frequently was less than 10 pounds. Id.

As for the medical evidence presented at the hearing, Trapp presented only one recent examination. Specifically, in September 2010, Dr. M.A. Samia examined Trapp. As for Trapp's right leg, Dr. Samia concluded that Trapp "has [a] normal gait with [a] mild-to-moderate limp," and that a cane appears "helpful" to him in dealing with his leg pain. Id. 223. As for Trapp's back, Dr. Samia reported Trapp's "subjective discomfort" and "modest range of motion." Id. As for Trapp's right hand, Dr. Samia concluded that Trapp "has decreased mobility and range of motion of the right index finger." Id.

Dr. Dorothy Linster, a state-agency physician, examined Trapp's medical records in December 2010. Dr. Linster concluded:

> Overall allegations are partially credible. . . . He did have some [musculoskeletal] limitations but these were . . . minimal. [His] complaints of walking problems are not consistent with [the] objective [medical evidence]. Severity of back pain is not supported by evidence in file.

Id. 69. Dr. Linster also found that Trapp's impairments cause the following exertional limitations: He can lift, carry, push, or pull 50 pounds occasionally and 25 pounds frequently, he can stand for about 6 hours in an 8-hour work day, he can sit for about 6 hours in an 8-hour work day, and his ability to handle and finger with his right hand is limited. Id. 68.

The ALJ followed the prescribed five-step process. At step one, the ALJ found that Trapp has not worked during the alleged disability period. At step two, the ALJ found that Trapp's leg, back, and right hand are severely impaired. At step three, the ALJ found that none of those impairments meet or medically equal any potentially applicable listings. Id. 12–13. At step four, the ALJ found that Trapp could return to his past relevant work as a correctional officer. Id. 16.

4

In making her findings at step four concerning Trapp's ability to return to his past relevant work as a correctional officer, the ALJ had to make three findings: (1) a determination of the individual's residual functional capacity ("RFC"); (2) a determination of the physical and mental demands of the individual's prior work; and (3) a finding that the individual's RFC is sufficient to meet those demands. SSR 82-62, 1982 WL 31386 (Jan. 1, 1982); Jasinski v. Barnhart, 341 F.3d 182, 184–85 (2d Cir. 2003); Battles v. Sullivan, 902 F.2d 657, 659–60 (8th Cir. 1990); Burns v. Astrue, No. 5:11-CV-737-D, 2012 WL 6645002, at *2 (E.D.N.C. Dec. 20, 2012) (unpublished); Long v. Astrue, No. 5:10-CV-425-D, 2011 WL 4024709, at *11 (E.D.N.C. Aug. 12, 2011) (unpublished), M&R adopted, 2011 WL 4024507 (E.D.N.C. Sept. 9, 2011) (unpublished); Pickett v. Astrue, No. 7:09-CV-87-D, 2010 WL 3075558, at *7–8 (E.D.N.C. June 28, 2010) (unpublished), M&R adopted, 2010 WL 3075555 (E.D.N.C. Aug. 5, 2010) (unpublished). The ALJ made each of those findings in Trapp's case. See Tr. 13–16.

First, the ALJ found that, despite the impairments to his leg, back, and right hand, Trapp has the RFC to lift, carry, push, or pull 50 pounds occasionally and 25 pounds frequently, to stand for about 6 hours in an 8-hour work day, and to frequently perform "tasks requiring handling and fingering." Id. 13; accord id. 68 (Dr. Linster's findings). As for Trapp's use of a cane, the ALJ found "no indication in the record" that Trapp requires a cane to walk. Id. 15. In making this finding, the ALJ considered Dr. Samia's comment that "[i]t does appear an assistive device is helpful with regards to both ambulation and balance." Id. 223. The ALJ also considered the opinion of Dr. Linster who concluded that Trapp's "complaints of walking problems are not consistent with [the] objective [medical evidence]." Id. 69. The ALJ gave Dr. Samia's opinion little weight because "it is based on a one-time examination . . . and is not supported by [Dr. Samia's] own clinical findings." Id. 16. In contrast, the ALJ found that Dr. Linster's opinion was consistent with the medical record

5

and gave it "great weight." Id. Before making this determination, the ALJ explained in great detail the specific evidence from the record on which she relied. Id. 15.

Second, the ALJ found that Trapp's past job as a correctional officer, as he had described it, required the sort of work described in the "corrections officer" entry of the Department of Labor's Dictionary of Occupational Titles (DOT). Id. 16. According to that entry, being a correctional officer requires "exerting 20 to 50 pounds of force occasionally . . . and/or 10 to 25 pounds of force frequently . . . and/or greater than negligible up to 10 pounds of force constantly." "Correction Officer," Dep't of Labor, Dictionary of Occupational Titles 372.667-018.

Third, the ALJ compared Trapp's RFC with the demands of working as a correctional officer. The ALJ noted, inter alia, that Trapp's right-hand injury had not prevented him from doing that work in the past. Ultimately, the ALJ concluded that Trapp "is capable of performing past relevant work as a corrections officer." Tr. 16.

Trapp makes two arguments in opposition to the ALJ's findings at step four.[2] First, Trapp argues that the ALJ impermissibly "substituted her lay opinion for that of Dr. Samia." Pl.'s Br. 5. Trapp argues that whether he requires a cane was a medical judgment, and medical judgments "are not within the ambit of an ALJ's expertise." Id. Trapp also argues that the ALJ erroneously relied on the opinion of Dr. Linster, who had never examined Trapp, instead of Dr. Samia, who examined Trapp once. See id.

The ALJ did not err. Dr. Samia's assessment that a cane is "helpful" to Trapp does not conflict with the ALJ's finding that Trapp does not require a cane to walk. Even if it did, however,

---

[2] In Trapp's request for review to the Appeals Council, Trapp also argued that the ALJ erred by failing to call a vocational expert to testify at the hearing. Tr. 145–46. Trapp has not raised that argument on appeal. Thus, the argument is waived.

assessing physicians' opinions in light of the objective medical evidence is what ALJs are supposed to do. See, e.g., 20 C.F.R. § 404.1527(c) (setting out the factors to be considered in deciding how much weight to give a particular medical opinion); Radford v. Colvin, No. 13-1021, 2013 WL 5790218, at *6 (4th Cir. Oct. 29, 2013); Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006); Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005); Craft v. Apfel, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (unpublished table decision); Craig, 76 F.3d at 590. Had the ALJ not explained why she decided to weight Dr. Linster's opinion more heavily than Dr. Samia's, that might have been a problem. See Radford, 2013 WL 5790218, at *6. The ALJ, however, explained her decision in great detail (Tr. 16), and substantial evidence supports the ALJ's analysis.

Next, Trapp argues that the ALJ failed to make a finding about the mental and physical demands of being a correctional officer. Pl.'s Br. 4. He maintains that if the ALJ had made such a finding, she would have concluded that Trapp could not meet those demands. Id. 5.

Trapp's assertion that the ALJ failed to make a finding about the mental and physical demands of being a correctional officer is incorrect. The ALJ did. See Tr. 16. Moreover, Trapp's contention that he cannot meet those demands is not sufficient to overturn the ALJ's contrary finding. Here, the ALJ cited both Trapp's testimony and the medical evidence and found that Trapp could move the requisite amount of weight at the requisite frequency. Tr. 13–16. Then, citing both Trapp's own testimony and the Department of Labor's Dictionary of Occupational Titles, the ALJ found that being a correctional officer involved moving no more weight than Trapp was capable of moving. Id. 16. Simply put, substantial evidence supports the ALJ's finding that Trapp is able to perform the duties of a correctional officer. See, e.g., Hunter, 993 F.2d at 35. Accordingly, the Commissioner properly denied Trapp's request for benefits.

7

## III.

In sum, the court GRANTS the Commissioner's motion for judgment on the pleadings [D.E. 26], DENIES Trapp's motion for judgment on the pleadings [D.E. 24], and AFFIRMS the Commissioner's final decision. The action is DISMISSED. The clerk shall close the case.

SO ORDERED. This **25** day of November 2013.

JAMES C. DEVER III
Chief United States District Judge